# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| CHRISTIAN C. NWACHUKWU, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 04-0997 (RMU) |
| | : | | |
| v. | : | Document Nos.: | 3, 17, 14 |
| | : | | |
| JOHN T. ROONEY *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

## MEMORANDUM OPINION

### DENYING THE PLAINTIFF'S MOTION TO STRIKE AND
### GRANTING THE DEFENDANT'S MOTION TO DISMISS

## I.   INTRODUCTION

The *pro se* plaintiff, Christian C. Nwachukwu, seeks damages and injunctive relief from the Office of Bar Counsel ("Bar Counsel") and various attorneys[1] who work at the Bar Counsel (collectively the "defendants"), because the defendants dismissed the plaintiff's complaint against his former attorney.  The plaintiff brings this action under 22 U.S.C. § 1983, Title VII of the Civil Rights Act of 1964 ("Title VII"), and the D.C. Human Rights Act.  The plaintiff alleges that the defendants' decision to discontinue further investigation into his complaints was motivated by unlawful racial discrimination.  The defendants filed a motion to dismiss the plaintiff's complaint and the plaintiff has responded with procedural challenges.  The court denies the plaintiff's motion to strike and the court concludes that the defendants are not procedurally barred from presenting their defense.  The court also grants the defendants' motion to dismiss because the defendants are entitled to absolute immunity with respect to their determinations, which are judicial in nature.

---

[1]     The plaintiff names John T. Rooney, Joyce E. Peters, and Joanne Doddy Fort in his complaint.

## II.   BACKGROUND

### A.   Factual Background

The catalyst for the instant action against the Bar Counsel and its employees is a bitter dispute between the plaintiff and the plaintiff's former attorney, John F. Karl ("Karl"), over funds recovered from a prior litigation that involved a 1994 car accident.  Compl. ¶ 1.  After settlement negotiations between the plaintiff and the at-fault party's insurer failed, the plaintiff hired Karl to represent him in litigation in December 1997.  *Id*. ¶ 9.  Before the trial, the plaintiff incurred medical expenses, which were paid for in part by John Hancock Life Insurance Company ("John Hancock Life"), the plaintiff's insurer.  *Id*. ¶ 16.  On March 2, 1995, the plaintiff signed a subrogation agreement with John Hancock Life, whereby the plaintiff agreed to reimburse John Hancock Life "for any and all payments issued by [John Hancock Life] for medical expenses incurred as a result of th[e October 1994 car] accident."  *Id*. ¶¶ 4,5, Ex. A.  It is undisputed that John Hancock Life paid $16,721.20 on behalf of the plaintiff.  *Id*. ¶ 34; Defs.' Mot. to Dismiss ("Defs.' Mot.") at 2.

On May 28, 1998, a jury awarded the plaintiff $45,000.00.  Compl. ¶ 12.  Dissatisfied with the recovery, which the plaintiff claimed "was less than all relevant expenses," the plaintiff asked Karl to reduce his attorney's fee, reimburse John Hancock Life a reduced amount, or assist the plaintiff in negotiating with John Hancock Life forgiveness or a reduction of the John Hancock Life lien.  *Id*. ¶¶ 13, 14, 15, 16.  Karl refused the requests but offered to "to give John Hancock a call."  *Id.* ¶ 20.   At the request of the plaintiff, Karl did not disburse the funds set aside for John Hancock Life.  *Id*. ¶14.  Instead, Karl retained the $16,721.20 disputed funds while the plaintiff attempted to negotiate the reduction or removal of the lien by contacting Medical Claim Services, a

third party administrator for John Hancock Life.  *Id.* ¶ 19.

According to the plaintiff, an employee at Medical Claim Services orally agreed "to close the file and hang it up on the shelf until further notice" but was unwilling to commit this agreement to writing indicating that "any letter sent from her office would only confirm the subrogation agreement and [her] obligation to honor it."  *Id.* ¶ 31., Ex. D.  The plaintiff transcribed messages that a Medical Claim Services employee allegedly left on his answering machine.  These messages stated that John Hancock Life would likely audit the plaintiff's account and "request their money back" if the plaintiff continued to call them because continuous calls could arouse suspicion.  *Id.*, Ex. D.  Even though the plaintiff has acknowledged that by signing the subrogation agreement he was obligated to pay back John Hancock Life, he nonetheless has vigorously argued that the employee's oral assurances gave the plaintiff a valid claim to the disputed funds and that Karl had a duty to give the disputed funds to him.  *Id.* ¶¶ 31, 32, Ex. I.

On May 8, 2000, the plaintiff sent a letter to Karl, demanding the release of all remaining monies from the judgment, including those set aside for the John Hancock Life lien.  *Id.* ¶ 33.  Karl refused to disburse to the plaintiff the remaining funds set aside for John Hancock Life without a written waiver and stated to the plaintiff that he was ethically obligated to retain the disputed funds.  *Id.* ¶ 29.  The plaintiff filed a complaint against Karl with the Bar Counsel on July 19, 2000, for refusing to disburse the disputed funds.  *Id.* ¶¶ 37, 38.  He also sued his former attorney; that case was dismissed by this court.  *See Nwachukwu v. Karl*, Civil Action No. 02-0469 (Mem. Op. dated Jan. 28, 2005).

In the plaintiff's letter to the D.C. Bar Association he alleged that "John Hancock Claim Services . . . clearly indicate[d] its intention not to seek any reimbursement of the medical expenses

paid" but Karl refused to release the disputed funds.  Compl., Ex. I.  Responding to the complaint, the defendant John T. Rooney, Assistant Bar Counsel, wrote Karl advising him of the plaintiff's complaint and requesting a copy of the retainer agreement and the settlement disbursement sheet for the case on August 17, 2000.  *Id*., Ex. J.  On September 8, 2000, Karl responded to Mr. Rooney's requests.  Karl's response, however, was addressed to Sharon Bradford, Case Manager at the Bar Counsel.  *Id*., Ex J.  Karl explained to the Bar Counsel that: (1) John Hancock Life had not released the lien; (2) Medical Claim Services was not authorized to waive or discharge the John Hancock Life lien and had stated this to the plaintiff explicitly; and (3) absent a written waiver from John Hancock Life, Karl had an ethical obligation to withhold the funds from the plaintiff. *Id*., Exs. J, G, H.

On September 18, 2000, Ms. Bradford wrote the plaintiff enclosing the response from Karl. *Id*., Ex. J.  On October 11, 2000, the plaintiff wrote Ms. Bradford challenging Karl's response and reiterating that Karl improperly withheld the funds to pay the lien.  *Id.*, Ex. K.  On August 10, 2001, Mr. Rooney wrote the plaintiff advising him that the office found no "clear and convincing evidence" of ethical violations committed by Karl.  *Id*., Ex. L.  In detail, Mr. Rooney justified this determination by explaining that: (1) Karl was bound by District of Columbia Rules of Professional Conduct ("DCRPC"), namely, Rule 1.15 (c), to either hold the disputed funds in trust until the dispute was resolved or file an interpleader; (2) Karl was under no obligation to take steps to resolve the dispute under the DCRPC; and (3) Karl did not act improperly by asking the plaintiff to pay the contingency fee immediately upon receipt of the court award or by refusing to provide [the plaintiff] hourly billing information because the plaintiff signed a contingency agreement.  *Id*., Ex. L.

Still unsatisfied, on September 7, 2001, the plaintiff wrote Mr. Rooney a "Motion for Reconsideration and Request for Decision by the Appropriate Committee of the Bar Counsel." *Id.*, Ex. M.  In this "motion," the plaintiff charges that Mr. Rooney: (1) "was selective in his consideration of the facts while ignoring several key facts in making his decision;" (2) "failed to address the issue of the escrow account;" (3) made an arbitrary decision "not based on substantial evidence in the record;" (4) failed to cite any legal authority in his decision; and (5) "shifted the burden of proof from the attorney to the client." *Id.*  On September 26, 2001, Mr. Rooney responded to the plaintiff's allegations and stated that the Bar Counsel stood by its initial decision to dismiss the matter.  *Id.*, Ex. N.  On October 22, 2001, the plaintiff wrote Mr. Rooney again, this time calling his submission to the Bar Counsel a "Motion to Appeal Your Decision to the Appropriate Committee of the Bar Counsel."  *Id.*, Ex. O.  The plaintiff argues in this "motion" that "the need to ensure that 'separation of the funds of a client from those of his lawyer' does not rest on whether or not the lawyer 'acted consistently with the Rules.'" *Id.*

On January 7, 2002, Joyce E. Peters, Bar Counsel, responded to the plaintiff's letter explaining that "the record gives [the Bar Counsel] no reason to suspect that [Karl] did not properly hold the funds in trust."  *Id.*, Ex. P.  Ms. Peters also provided the plaintiff with the contact information for Joanne Doddy Fort, Chair of the Board on Professional Responsibility.  *Id.*  On March 12, 2002, the plaintiff wrote Ms. Fort challenging the Bar Counsel's decision to dismiss the investigation.  *Id.*, Ex. Q.  The plaintiff also complained that the Bar Counsel recommended to Karl that he file an interpleader action in order to resolve the dispute without advising him.  *Id.*  On August 26, 2002, Ms. Everhart, Assistant Executive Attorney, responded to the plaintiff's letter, stating that the letter would be reviewed by the Chair of the Board to determine if "Bar Counsel's

decision was fair and comported with Rule XI[2]."  *Id*., Ex. R.  On March 20, 2003, the plaintiff

wrote another letter to Ms. Fort regarding the status of his request for review.  *Id*., Ex. S.  The

record does not indicate whether the plaintiff ever received further communication from Ms. Fort.

## B.    Procedural Background

On June 18, 2004, the plaintiff filed the instant action under 42 U.S.C. § 1983, Title VII,

and the D.C. Human Rights Act, D.C. Code 2-1402.01 *et seq*.,[3] against the Office of Bar Counsel,

Mr. Rooney, Ms. Peters, and Ms. Fort.  The plaintiff is suing the three Counsel members in their

official and personal capacities.  Compl. at 2.  The plaintiff alleges that the Bar Counsel failed to

pursue his complaint because he is of African descent and his former attorney is Caucasian.  *Id*. at

23.  As a result of this failure to penalize his former attorney, the plaintiff asserts that he is the

victim of  "discriminatory misconduct based on race and ethnicity in determining fitness to practice

law."  Pl.'s Supp. Reply at 2.  The plaintiff seeks $50,000 in compensatory damages and

$5,000,000 in punitive damages.  Compl. at 25.  The plaintiff also seeks "an injunction against

future violation of plaintiff's rights to equal protection of the laws and to enjoy property without

being deprived thereof without due process of law."  *Id*.

The defendants filed a motion to dismiss the plaintiff's claim arguing that: (1) the

defendants are entitled to absolute immunity for their determination; (2) the plaintiff has failed to

state a claim of discriminatory treatment; and (3) the plaintiff, as a third party to the Bar's

determination, has failed to state any cognizable cause of action against the defendants.  Defs.'

---

[2]        Rule XI refers to the District of Columbia Bar Rules governing disciplinary
           proceedings.

[3]        The court notes that while the plaintiff cites the D.C. Human Rights Act as section 1-
           2501 *et seq.*, the code is properly cited as D.C. Code section 2-1402.01 *et seq.*

Mot. 6-13.  The plaintiff responded to the defendant's motion to dismiss by arguing that: (1)  the defendants are not entitled to absolute immunity for the failure to prosecute claims against attorneys; (2) the motion is time barred because it was not filed within twenty days as required by Federal Rule of Civil Procedure 12(a)(1)(A); and (3) the plaintiff presented a sufficient claim because if the former attorney had been of African descent and the plaintiff Caucasian, the Bar Counsel would have required the former attorney to provide evidence of a trust account.  Pl.'s Opp'n to Defs.' Mot. to Dismiss ("Pl.'s Opp'n").

On November 17, 2004, the plaintiff filed a motion to strike submissions made by John C. Yang, one of the defendants' attorneys.  Pl.'s Mot. to Strike Submissions made by John C. Yang ("Pl.'s Mot. to Strike").  On August 2, 2004, Mr. Yang filed a Reply Memorandum of Points and Authorities to the plaintiff's opposition ("Reply"), and on November 9, 2004, Mr. Yang submitted a notice of appearance.  *Id.*  Although the plaintiff concedes that Mr. Yang signed the reply submitted, he argues that because Mr. Yang filed a notice of appearance, he "nullified the efficacy or validity of the Rules as prescribed" and therefore Mr. Yang "never existed in so far as the instant action is concerned and [the court] must therefore strike all submissions." *Id.* n. 1, 6.  The defendants submitted an opposition to the plaintiff's motion to strike, stating that Mr. Yang has appeared on all filings submitted to the court and that the notice of appearance was filed because another attorney, who had been the designated recipient of all electronic notices, withdrew from the case.  Defs.' Opp'n to Pl.'s Mot. to Strike at 2.  The court now addresses these motions in turn.

### III.   ANALYSIS

#### A.   The Defendants' Motion To Dismiss is Timely

As a preliminary matter, the court addresses the plaintiff's two arguments[4] that the court should not consider the merits of the defendants' motion to dismiss.  First, the plaintiff argues that the defendants' motion is time-barred because the motion was submitted on July 12, 2004, four days after the twenty-day deadline provided in Federal Rule of Civil Procedure 12(a)(1)(A).  Pl.'s Opp'n at 8-9.  Although technically filed after twenty days, the defendants' motion to dismiss is timely pursuant to Federal Rules of Civil Procedure 6(a) and 6(e).  Rule 6(e) allows an additional three days for any response served by mail.  FED. R. CIV. P. 6 (e) (providing that whenever a Rule permits an act to be accomplished within a certain time after "service," an extra 3 days will be added to the response time if the service was made through the mail).  Because the plaintiff served his complaint by mail, this three-day extension pushed the deadline to respond to July 11, 2004. Because July 11, 2004 fell on a Sunday, the effective deadline further extended until Monday, July, 12, 2004.  Fed. R. Civ. P. 6(a) (providing that when a defined time period ends on such days [Saturday, Sunday, or legal holiday], the time period is deemed extended until the end of the next day that is not a Saturday, Sunday or legal holiday).  Therefore, the court concludes that the defendants' motion filed on July 12, 2004, is timely.

---

[4]      The court notes that while the plaintiff styles his opposition as a "Memorandum in opposition to defendants' motion to dismiss the complaint for failure to state a claim and for lack of subject matter jurisdiction; and plaintiff's motion to dismiss the defendants' motion for lack of timeliness," the court treats the plaintiff's arguments in tandem, collectively as the "plaintiff's opposition."

## B.   The Plaintiff's Motion to Strike

### 1.   Legal Standard for a Motion to Strike

The decision to grant or deny a motion to strike is vested in the trial judge's sound discretion. *Talbot v. Robert Matthews Distrib. Co.*, 961 F.2d 654, 664-65 (7th Cir. 1992) (citing *Alvarado-Morales v. Digital Equip. Corp.*, 843 F.2d 613, 618 (1st Cir. 1988)).  On its own initiative or on a party's motion, the court may strike from a pleading[5] any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter in order to avoid the time, effort, and expense necessary to litigate spurious issues.  FED. R. CIV. P. 12(f); *Fantasy, Inc. v. Fogerty, Inc.*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994).

Courts disfavor motions to strike.  *Stabilisierungsfonds Fur Wein v. Kaiser Stuhl Wine Distribs. Pty. Ltd.*, 647 F.2d 200, 201 (D.C. Cir. 1981) (citing 5C FED. PRAC. & PROC. 2d § 1380 at 783); *accord Morse v. Weingarten*, 777 F. Supp. 312, 319 (S.D.N.Y. 1991); *Mirshak v. Joyce*, 652 F. Supp. 359, 370 (N.D. Ill. 1987); *Schramm v. Krischell*, 84 F.R.D. 294, 299 (D. Conn. 1979). The rule does not by its terms require the striking of matters that are prejudicial.  FED. R. CIV. P. 12(f).  Yet, because courts view motions to strike with such disfavor, many courts will grant such motions only if the portions sought to be stricken are prejudicial or scandalous.  *Makuch v. Fed. Bureau of Investigation*, 2000 U.S. Dist. LEXIS 9487, at *7 (D.D.C. Jan. 6, 2000); *e.g.*, *Wiggins v. Philip Morris, Inc.*, 853 F. Supp. 457, 458 (D.D.C. 1994) (Lamberth, J.); *see also* 5A FED. PRAC. & PROC. 2d §§ 1380, 1382.  Thus, absent a "strong reason for so doing," courts will generally "not tamper with pleadings."  *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976);

---

[5]      A "pleading" includes a complaint, answer, reply to a counterclaim, answer to a cross-claim, third-party complaint, or third-party answer.  FED. R. CIV. P. 7(a).

*Lennon v. Seaman*, 63 F. Supp. 2d 428, 447 (S.D.N.Y. 1999).

In considering a motion to strike, the court will draw all reasonable inferences in the pleader's favor and resolve all doubts in favor of denying the motion to strike. *Wailua Assocs. v. Aetna Cas. & Sur. Co.*, 183 F.R.D. 550, 553-54 (D. Haw. 1998); *Joe Hand Promotions, Inc. v. Nekos*, 18 F. Supp. 2d 214, 218 (N.D.N.Y. 1998); *Seibel v. Society Lease, Inc.*, 969 F. Supp. 713, 715 (M.D. Fla. 1997). Consequently, the burden lies with the movant. *Vakharia v. Little Co. of Mary Hosp. & Health Care Ctrs.*, 2 F. Supp. 2d 1028, 1033 (N.D. Ill. 1998).

## 2.    The Court Denies the Plaintiff's Motion to Strike

Because the defendants' reply memorandum is not a pleading, as defined in Federal Rule of Civil Procedure 7(a), and motions to strike only apply to pleadings, the plaintiff's motion to strike is improperly directed at the defendants' reply. FED. R. CIV. P. 12(f) (stating that "upon motion made by a party within 20 days after the service of the pleading upon the party . . . the court may order stricken from *any pleading* any insufficient defense or any redundant, immaterial, impertinent or scandalous matter") (emphasis added). Therefore, the court denies the plaintiff's motion to strike.

As noted, the plaintiff brings this action *pro se*. In light of the D.C. Circuit's directives of judicial leniency for *pro se* litigants, *see e.g., Moore v. Agency for Int'l Dev.*, 994 F.2d 874, 876 (D.C. Cir. 1993), the court further explains that a motion to strike is for "redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). It is not a vehicle to penalize parties and prevent the court from considering a party's motion. The plaintiff bases his motion to strike submissions by the defendants' attorney Mr. Yang, specifically the Defendants' Reply Memorandum of Points and Authorities in further Support of Defendants Motion to Dismiss for

Failure to State a Claim, on Local Civil Rule 83.6, which states that "an attorney eligible to appear may enter an appearance in a civil action by signing any pleading described in Rule 7(a) . . . or by filing written notice of the entry of appearance." LCvR 83.6.  The plaintiff interprets Local Civil Rule 83.6 to mean that Mr. Yang's notice of appearance cancelled the effectiveness of his submission.  Pl.'s Mot. to Strike at 7.  This argument, although creative, lacks merit for reasons needing little explanation.  Nothing in Local Civil Rule 83.6 suggests that an attorney disappears before the court for filing a notice of appearance after filing signed submissions as the plaintiff contends.  Mr. Yang properly appeared in this case, and the plaintiff as well as the court had adequate notice of Mr. Yang's address, telephone number, and bar identification number, as required by the applicable rules.  FED. R. CIV. P. 11(a); LCvR 83.6.  Accordingly, the court denies the plaintiff's motion to strike.

### C.   The Defendants' Motion to Dismiss

### 1.   Legal Standard for Rule 12(b)(6) Motion to Dismiss

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint.  *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).  The complaint need only set forth a short and plain statement of the claim, giving the defendant fair notice of the claim and the grounds upon which it rests.  *Kingman Park Civic Ass'n v. Williams*, 348 F.3d 1033, 1040 (D.C. Cir. 2003) (citing FED R. CIV. P. 8(a)(2) and *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  "Such simplified notice pleading is made possible by the liberal opportunity for discovery and the other pre-trial procedures established by the Rules to disclose more precisely the basis of both claim and defense to define more narrowly the disputed facts and issues."  *Conley*, 355 U.S. at 47-48 (internal quotation marks omitted).  It is not necessary for the plaintiff to plead all elements of his prima facie case in the

complaint, *Swierkiewicz v. Sonoma N.A.*, 534 U.S. 506, 511-14 (2002), or "plead law or match facts to every element of a legal theory." *Krieger v. Fadely*, 211 F.3d 134, 136 (D.C. Cir. 2000) (internal quotation marks and citation omitted). That said, it is possible, however, "for a plaintiff to plead too much: that is, to plead himself out of court by alleging facts that render success on the merits impossible." *Sparrow v. United Airlines, Inc.*, 216 F.3d 1111, 1116 (D.C. Cir. 2000).

Accordingly, "the accepted rule in every type of case" is that a court should not dismiss a complaint for failure to state a claim unless the defendant can show beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Warren v. District of Columbia*, 353 F.3d 36, 37 (D.C. Cir. 2004); *Kingman Park*, 348 F.3d at 1040. Thus, in resolving a Rule 12(b)(6) motion, the court must treat the complaint's factual allegations – including mixed questions of law and fact – as true and draw all reasonable inferences therefrom in the plaintiff's favor. *Macharia v. United States*, 334 F.3d 61, 64, 67 (D.C. Cir. 2003); *Holy Land Found. for Relief & Development v. Ashcroft*, 333 F.3d 156, 165 (D.C. Cir. 2003); *Browning*, 292 F.3d at 242. While many well-pleaded complaints are conclusory, the court need not accept as true inferences unsupported by facts set out in the complaint or legal conclusions cast as factual allegations. *Warren*, 353 F.3d at 39; *Browning*, 292 F.3d at 242.

**2.    The Court Grants the Defendants' Motion to Dismiss**

The court has resolved the preliminary matters of whether it can entertain the defendants' motion to dismiss. On its face, the plaintiff's complaint attempts to obtain collateral review of the defendants' disciplinary actions which, to the plaintiff's chagrin, failed to end in punishment of his former attorney Karl. The court now addresses the merits of the defendants' motion to dismiss.

### a.    The Defendants Enjoy Absolute Immunity

The District of Columbia Court of Appeals ("DCCA") is authorized "to make such rules as it deems proper respecting the examination, qualification, and admission of persons to membership in its bar and their censure, suspension, and expulsion." D.C. Code §11-2501(a) (2005); *Thomas v. Knight*, 257 F. Supp. 2d 86, 89 (D.C. Cir. 2003). Pursuant to this authority, the DCCA created the Board of Professional Responsibility ("the Board") and granted the Board "the power and duty to investigate alleged grounds for attorney discipline, to adopt its own rules and procedures, to appoint Bar Counsel . . . and to prepare and forward its own findings and recommendations to the [DCCA]." D.C. Bar R. XI, § 4(e)(2004). Appointed by the Board of Professional Responsibility, the Bar Counsel is authorized to investigate all matters involving misconduct by an attorney subject to the disciplinary jurisdiction of the DCCA. *Thomas*, 257 F. Supp. 2d at 89. The Bar Counsel's decision to investigate a complaint to ascertain if grounds exist to initiate formal proceedings "is well-recognized as a determination which is comparable to judicial decision-making." *Simons v. Bellinger*, 643 F.2d 774, 780 (D.C. Cir. 1980). The purpose in conducting disciplinary proceedings and imposing sanctions is not to punish the attorney, rather, it is to offer protection by assuring the continued or restored fitness of an attorney to practice law. *In re Steele*, 630 A.2d 196 (D.C. 1993). Further, professional disciplinary violations arise from attorney's malfeasance, not the actual harm imposed on the client. *In re Shelnutt*, 719 A.2d 96 (D.C. 1998).

Judicial immunity protects judges and officials performing quasi-judicial functions from liability for a given act if two conditions are met. First, the act must not have been taken in the "clear absence of all jurisdiction." *Cunningham v. Dist. of Columbia*, 584 A.2d 573, 576 (D.C. 1990) (citations omitted). Second, the act must be a judicial act. *Id.* Case law has recognized that

the protection of judicial immunity is not confined only to judges but may extend to other officers of government whose duties are related to the judicial process. *Barr v. Mateo,* 360 U.S. 564, 569 (1959); *In re Nace*, 490 A.2d 1120, 1124 (D.C. 1985). In *Butz v. Economou*, 438 U.S. 478 (1978), the Supreme Court outlined three policy considerations for determining whether immunity is absolute or limited: (1) the functional comparability of an official's judgment to those of a judge; (2) the nature of the controversy in which the official is forced to become a participant; and (3) whether the system in which the official operates contains safeguards adequate to reduce the need for private damage actions as a means of controlling unconstitutional conduct. *Butz*, 438 U.S. at 512.

Because the defendants are entitled to absolute immunity, the plaintiff is precluded from bringing an action based on the defendants' resolution of the plaintiff's complaint. First, the D.C. Bar Rules grant immunity to Bar Counsel members "from suit for any conduct in the course of their official duties." D.C. Bar R. XI, § 19(a). Although the plaintiff names Mr. Rooney, Ms. Peters, and Ms. Fort in both their individual and official capacities, nothing in the complaint supports an allegation that the individuals who acted on behalf of the Board and Bar Counsel did so other than in their official capacity and in the course of official duties. *Briggs v. Goodwin,* 569 F.2d 10, 15 (D.C. Cir. 1977). Second, the defendants' allegedly wrongful decision not to initiate formal proceedings against Karl is judicial in nature. Review of the three *Butz* considerations supports the conclusion that the Bar Counsel and Bar Counsel members perform quasi-judicial functions entitled to absolute immunity. Specifically, the court concludes that: (1) the determination not to initiate formal proceedings against Karl was functionally comparable to a judicial determination; (2) the Bar Counsel and Bar Counsel members are likely to be subjected to

-14-

suit by aggrieved clients and attorneys; and (3) there are adequate safeguards to protect the interests of the plaintiff because the plaintiff retains the right to seek review the Bar Counsel's non-judicial determinations by the District of Columbia Court of Appeals.[6]

The plaintiff argues that the defendants should not be afforded absolute immunity for their alleged failure to further investigate the former attorney's trust accounts. The court disagrees. First, the decision not to take further action against an attorney is "conduct" within the meaning of D.C. Bar Rule XI §19 (a). In *Anderson v. District of Columbia Public Defender Service*, the court held that the Bar Counsel's decision not to discipline an attorney fell under the immunity offered by the D.C. Bar Rules. *Anderson v. Dist. of Columbia Pub. Defender Serv.*, 756 F. Supp. 28, 31 (D.D.C. 1991)(*aff'd in part, vacated in part on other grounds by* 980 F.2d 746 (D.C. Cir. 1992). Second, contrary to the plaintiff's allegation, the Bar Counsel indeed conducted an investigation in response to the plaintiff's complaint against Karl. The record provides extensive evidence that the Bar Counsel investigated the plaintiff's allegations and determined that Karl comported with the rules of professional responsibility. Compl., Exs. A, K, H, L, M, O, P. That the plaintiff disagrees with the defendants' conclusion does not strip the defendants' privilege of immunity. The facts of this case fall squarely within the scope of judicial immunity. Accordingly, the court grants the defendants' motion to dismiss.

### b.    The Plaintiff Fails to State a Cause of Action

Even assuming *arguendo* that the defendants were not entitled to absolute immunity, the plaintiff has failed to state any cognizable cause of action against the defendants. The plaintiff's

---

[6]    D.C. Bar Rule, section 19 (b) states in relevant part, "disciplinary complaints against members of the Board involving activities other than those performed within the scope of their duties as Board members shall be submitted directly to the [District of Columbia Court of Appeals]."  D.C. Bar. R. §19(b).

remaining rambling irrelevancies include the defendant's alleged violations of the U.S. Constitution, Title VII, and the D.C. Human Rights Act ("DCHRA").  The court now addresses each of these in turn.

### i.   The Constitutional Claims

The plaintiff alleges that the defendants violated his First, Fifth, and Fourteenth Amendment rights because the defendants decided not to review Karl's trust account records or discipline Karl.  Compl. ¶¶ 72-79.  Section 1983, which provides a cause of action for constitutional violations,  provides in pertinent part that:

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizens of the United States, or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. 1983.  As mentioned, a pleading should not be dismissed for failure to state a claim unless it is beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle [him] to relief.  *Warren*, 353 F.3d at 37; *Kingman Park*, 348 F.3d at 1040.  The defendants meet this rigorous standard and the case warrants dismissal because the plaintiff failed to sufficiently plead that the refusal of the Bar Counsel to discipline the plaintiff's former attorney Karl violated the plaintiff's rights.  The plaintiff does not explain in his complaint how the defendants' conduct violated his First Amendment rights.  While the plaintiff is not obligated to plead all elements of his First Amendment claim, his complaint does not so much as hint at any reason why the defendants' conduct infringed the plaintiff's free speech rights.  FED. R. CIV. P. 8(a).  Allowing the plaintiff to proceed solely on unsubstantiated legal conclusions would render federal pleading standards toothless and would unnecessarily burden the defendants.

Further, there is no support for the plaintiff's equal protection claim under neither the Fifth nor the Fourteenth Amendments.  The plaintiff's complaint does not set forth the fundamental requirement of a valid equal protection claim: that the plaintiff was treated differently than others similarly situated based on race.  *Price v. Crestar Securities Corp.*, 44 F. Supp. 2d 351, 353 (D.D.C. 1999).  The plaintiff is not a party to the disciplinary proceedings against Karl.  At best, the allegations in the plaintiff's complaint could allege an equal protection claim if the plaintiff was an attorney of African descent prosecuted by the defendants under analogous circumstances.  But that situation is not before the court.  Instead, the plaintiff in the case at bar claims that the defendants' decision to dismiss the plaintiff's complaint against Karl was motivated by discrimination because Karl is Caucasian and the plaintiff is "black and of African descent."  Compl. ¶¶ 72, 74.

Finally, the plaintiff's complaint fails to assert a cognizable claim because it is premised on the allegation that the plaintiff has suffered an injury resulting from the defendants' conduct as it relates to Karl.  Allowing the plaintiff to proceed requires the court to assume that the defendants owed the plaintiff, as Karl's former client, a duty to impose sanctions or conduct their inquiry to the plaintiff's satisfaction.  The court refuses to do so.  The bar counsel, in its judicial capacity, is not acting on behalf of the plaintiff, but rather, on behalf of the bar and its members to ensure professional responsibility.  *See* D.C. Bar R. I, §9.  Because the plaintiff vehemently disagrees with the  defendants' determination and because the plaintiff suspects the defendants were motivated by racial discrimination, does not in turn indicate that the plaintiff had a right to see Karl penalized by the defendants.  Nor do the defendants owe the plaintiff compensatory and punitive damages for their determination.  For these additional reasons, the court dismisses the plaintiff's constitutional claims.

### ii.     Racial Discrimination Under Title VII

The plaintiff's inclusion of Title VII in the complaint exemplifies his strategy of throwing

everything including the kitchen sink in his action against the defendants.  His claim under Title

VII can also be summarily dismissed at this stage because the plaintiff does not allege violations

arising from an employment relationship.  Therefore, the plaintiff has failed to establish a prima

facie case of racial discrimination pursuant to the *McDonnell-Douglas* framework.  To establish a

prima facie case of racial discrimination, the plaintiff must show that: (1) he is a member of a

protected class; (2) he was similarly situated to an employee who was not a member of the

protected class; and (3) he and the similarly situated employee were treated disparately.  *O'Connor*

*v. Consolidated Caterers Corp.*, 517 U.S. 308, 310-311 (1996) (citing *McDonnell Douglas Corp.*

*v. Green*, 411 U.S. 792, 802 (1973).  For this additional reason, the court dismisses the plaintiff's

Title VII claim.

### iii.     The D.C. Human Rights Act

The plaintiff fails to state a claim under the DCHRA because the DCHRA does not apply

to the conduct involved in the plaintiff's complaint.  The DCHRA provides that:

> [e]very individual shall have an equal opportunity to participate fully in the economic,
> cultural and intellectual life of the District and to have an equal opportunity to
> participate in all aspects of life, including, but not limited to, in employment, in places
> of public accommodation, resort or amusement, in educational institutions, in public
> service, and in housing and commercial space accommodations.

D.C. Code § 2-1402.01.  The following section of the DCHRA, 2-1402.11, sets forth specific

prohibitions pertaining to particular types of persons (e.g., employers and employment agencies)

and particular types of conduct (e.g., refusing to hire, discriminating with respect to compensation).

Because the DCHRA does not include a prohibition on the alleged discriminatory conduct at issue

in this action, specifically the disciplinary proceedings of the Bar Counsel against the plaintiff's

former attorney, the plaintiff has failed to set a cause of action under the DCHRA.  For this additional reason, the court dismisses the plaintiff's DCHRA claim.


## IV.   CONCLUSION

For the foregoing reasons, the court denies the plaintiff's motion to strike the defendants' submissions and grants the defendants' motion to dismiss.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued this7th day of March 2005.


_____

RICARDO M. URBINA
United States District Judge